UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| INTERNATIONAL FIDELITY INSURANCE COMPANY, a New Jersey corporation,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>DRAEGER CONSTRUCTION, INC., a California corporation; JOHN E. DRAEGER, an individual; and JOHN E. DRAEGER, TRUSTEE OF JOHN E. DRAEGER REVOCABLE TRUST, domiciled in California,<br><br>　　　　　　Defendants. | Case No.: 10-CV-04398-LHK<br><br>ORDER DENYING PLAINTIFF'S APPLICATION FOR AN ORDER FOR DEFENDANTS TO SHOW CAUSE WHY SANCTIONS SHOULD NOT ISSUE |

On January 5, 2011, Plaintiff International Fidelity Insurance Company requested that this Court set a hearing at which Defendants are ordered to show cause why they should not be sanctioned for contempt of the Court's November 12, 2010 preliminary injunction (the "Preliminary Injunction"). Dkt. No. 33 ("Appl. for Order"); *see also* Dkt. No. 34 ("Ornum Del."). Defendants Draeger Construction, Inc., John E. Draeger, an individual, and John E. Draeger, Trustee of John E. Draeger revocable trust (collectively "Draeger") oppose International Fidelity's request. Dkt. No. 35 ("Opp'n"); *see also* Dkt. No. 36 ("Pappy Decl."); Dkt. No. 37 ("Radzinski Decl."). For the foregoing reasons, the Court hereby DENIES International Fidelity's request.

///

# I. BACKGROUND

International Fidelity's request for an order to show cause hearing is based on Draeger's alleged violation of the Preliminary Injunction.[1] International Fidelity sought the Preliminary Injunction out of an alleged fear that Draeger would not fulfill Draeger's payment and performance obligations on projects bonded by International Fidelity. *See* Dkt. No. 14. International Fidelity was concerned about Draeger's potential failure to perform because International Fidelity would be forced to perform Draeger's unfulfilled construction contract obligations.

In the Preliminary Injunction, the Court ordered Draeger, a construction contractor, to use all money obtained from projects covered by International Fidelity's bonds for the benefit of persons performing labor or providing materials on those projects and for payment of obligations arising in connection with such projects. Dkt. No. 30 ("Prelim. Inj."), at 2. In addition, under the Preliminary Injunction, Draeger must take specific action with regards to certain ongoing projects. First, Draeger is enjoined to require the project managers on three of its construction projects[2] to issue joint check payments for all persons performing labor or providing materials for projects covered by International Fidelity's surety bonds. *Id.* Second, Draeger is enjoined to open a special bank account ("Trust Account") for two of its projects, Isle Cove and Viewpoint at the Ridge. *Id.* at 3. Draeger is to place all funds from those projects into the Trust Account. *Id.* Withdrawals from the Trust Account must be made by checks which are signed by Draeger and countersigned by a representative of International Fidelity. *Id.* The Preliminary Injunction also contains restrictions on how Draeger can use funds that are deposited in the Trust Account. *Id.*

International Fidelity claims that Draeger has not complied with the preliminary injunction in two respects. Mot. 2. First, International Fidelity claims that Draeger has failed to require three

---

[1] International Fidelity filed its complaint on September 29, 2010. Dkt. No. 1. On the next day, September 30, 2010, International Fidelity moved for a temporary restraining order. Dkt. No. 4. This Court denied International Fidelity's motion and ordered International Fidelity to show cause why a preliminary injunction should issue. Dkt. No. 12. At the October 29, 2010 hearing on International Fidelity's preliminary injunction motion, Draeger consented to a preliminary injunction. On November 12, 2010, this Court issued the Preliminary Injunction at issue here. Dkt. No. 30.
[2] These projects, as stated in the Preliminary Injunction order, are the Atria Valley View, California Lakepoint, and Vista Greens Association projects.

of its project owners, as specified by the Preliminary Injunction, to issue joint checks.  Second, International Fidelity claims that Draeger has not established the joint control Trust Account.  International Fidelity has not, however, alleged that Draeger has misused any payments received from project owners.  Based on Draeger's alleged non-compliance, International Fidelity seeks a hearing at which Defendants must show cause why they should not be sanctioned for contempt of the Court's Preliminary Injunction.  *Id.* at 1-2.  In addition, International Fidelity seeks civil contempt sanctions for its costs of compelling Draeger to comply with the Preliminary Injunction.  *Id.* at 6.

## II.  LEGAL STANDARD

"Civil contempt in this context consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006) (citing *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)); *see also In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987) ("A person fails to act as ordered by the court when he fails to take all the reasonable steps within his power to insure compliance with the court's order.")  (citation, quotation marks, and alterations omitted).  "The contempt 'need not be willful,' and there is no good faith exception to the requirement of obedience to a court order." *In re Dual-Deck Video*, 10 F.3d at 695 (citing *In re Crystal Palace*, 817 F.2d at 1365).

"Civil contempt sanctions . . . are employed for two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992) (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04, 67 S. Ct. 677, 701-02 (1947)).  "Generally, the minimum sanction necessary to obtain compliance is to be imposed." *Id.* (citations omitted).  "Unlike the punitive nature of criminal sanctions, civil sanctions are wholly remedial." *Id.* (citation omitted).

"The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by 'clear and convincing evidence,' not merely a preponderance of the evidence." *In*

*re Dual-Deck Video*, 10 F.3d at 695 (citing *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982)).  "The burden then shifts to the contemnors to demonstrate why they were unable to comply."  *Stone v. City and County of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992) (citing *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983)).  "They must show they took every reasonable step to comply."  *Id.* (citation omitted).

"A court has wide latitude in determining whether there has been contemptuous defiance of its order."  *Gifford v. Heckler*, 741 F.2d 263, 265-66 (9th Cir. 1984) (citing *Neebars, Inc. v. Long Bar Grinding, Inc.*, 438 F.2d 47, 48 (9th Cir. 1971)).

### III.  ANALYSIS

The Court will consider whether either of Draeger's alleged violations of the Preliminary Injunction can serve as an appropriate basis for International Fidelity's requests for an order to show cause and for sanctions.

#### A. Alleged Violation of Joint Check Provision

International Fidelity's claim that Draeger has not complied with the Preliminary Injunction's requirement that three of its project owners issue joint checks is based on evidence that International Fidelity received from Draeger.  International Fidelity claims that Draeger has not provided it copies of any joint checks issued by project owners.  Mot. 2.  According to International Fidelity, the only evidence that Draeger has provided to substantiate Draeger's claim that it is in compliance with the joint check provision is a check register printout from its accounting system.  *Id.*  International Fidelity argues that this printout "would suggest" that Draeger is not receiving joint checks from the project owners.  *Id.*

Even if International Fidelity is correct that Draeger has not received any joint checks from project owners, International Fidelity has not met its burden to show by clear and convincing evidence that Draeger has violated the joint check provisions of the Preliminary Injunction.  In International Fidelity's own words, the evidence that it has provided to the Court does nothing more than "suggest" that Draeger is not in compliance with the Court's order.  Because International Fidelity has not met its burden, it cannot seek contempt sanctions based on Draeger's alleged non-

4

compliance with the joint check provisions of the Preliminary Injunction. Therefore, International Fidelity's request for a hearing to show cause on these grounds is denied.

Nevertheless, the Court notes that Draeger's response to International Fidelity's legitimate requests for proof that Draeger is receiving joint checks from its project owners is not acceptable. The Court placed the joint check provisions in the Preliminary Injunction at Draeger's request. But when asked to provide conclusive proof that it was complying with this portion of the Preliminary Injunction, Draeger's Chief Financial Officer Jeff Radzinski provided only a single e-mail with a single, virtually unexplained attachment. Ornum Decl., Ex. E.[3] Although the information contained in the attachment is very detailed, it is unclear how it shows that Draeger is in compliance with the joint check provisions of the Preliminary Injunction. The Court expects that Draeger will provide a more thorough explanation of any evidence that it proffers in the future. Such an explanation should address how Draeger's evidence proves that Draeger is in compliance with the Preliminary Injunction.

### B. Alleged Violation of Joint Trust Account Provision

Draeger admits that it has not yet established a joint trust account. Opp'n 5. Nevertheless, Draeger argues that a finding of contempt is not justified because it is in substantial compliance with the Preliminary Injunction. *Id.* at 1. Draeger attempts to characterize its failure to establish a Trust Account as a "technical violation." *Id.* at 6. Furthermore, Draeger claims that it has made more than reasonable efforts to open a Trust Account and that International Fidelity has actively inhibited the creation of a Trust Account. *Id.*

International Fidelity argues that Draeger has failed to establish a Trust Account despite its repeated efforts, by phone, e-mail and letter, to coordinate with Draeger. Mot. 2-3. Moreover, International Fidelity points out that Draeger once represented that it had opened a Trust Account

---

[3] The e-mail, sent to an International Fidelity consultant named Jordan Rosenfeld on December 17, 2010, contains an attachment file named "Detail Check Register History42.pdf" and contains the following text: "The first job is Valley View, then Cal Lakepoint, and lastly Vista Greens. – Jeff". *Id.* When printed, the attachment is fourteen pages of data in table format. *Id.* Each row provides various information related to a listed check number. *Id.*

5
Case No.: 10-CV-04398-LHK
ORDER DENYING PLAINTIFF'S APPLICATION FOR AN ORDER FOR DEFENDANTS TO SHOW CAUSE WHY SANCTIONS SHOULD NOT ISSUE

in compliance with the Preliminary Injunction but later, after already sending International Fidelity a bank signature card, admitted that the bank account did not comply. *Id.* at 3.

Neither party's version of the events appears to be wholly accurate. Draeger's failure to establish a Trust Account amounts to more than a "technical violation" of the Preliminary Injunction. The Preliminary Injunction, issued on November 12, 2010, contains explicit instructions that Draeger must establish a joint signature bank account with International Fidelity. Nearly two months have passed since the Court issued the Preliminary Injunction, and Draeger has still not opened such an account. As a result, Draeger is also not in compliance with the Preliminary Injunction's requirement that Draeger place all of the funds from the Isle Cove and Viewpoint at the Ridge projects, amounting to over $500,000, into the Trust Account. *See* Dkt. No. 38 ("Radzinski Supp. Decl.").

Despite its clearly established non-compliance, Drager has taken many reasonable steps to establish the account. First, Draeger's Chief Financial Officer Jeff Radzinski attempted to coordinate the establishment of a Trust Account directly with International Fidelity. On November 15, 2010, just three days after the Court issued the Preliminary Injunction, Radzinski sent an e-mail to Stanley Eng, Radzinski's contact at International Fidelity, asking whether he could coordinate setting up the Trust Account with Eng. Radzinski Decl., Ex. 1. Eng responded within minutes to let Radzinski know that he would contact International Fidelity's "Home Office" to make specific arrangements. *Id.* Eng informed Radzinski that someone would be in touch with him shortly. *Id.* Radzinski, however, never heard from anyone at International Fidelity. After nearly a month passed without a response, Radzinski again sent an e-mail to Eng. *Id.* Eng then gave Radzinski a direct contact at "HO" but provided no substantive assistance. *Id.*[4]

---

[4] International Fidelity's counsel has attempted to set up a conference call with Draeger's counsel to discuss creating a Trust Account. International Fidelity's counsel first made the suggestion in an e-mail sent to Draeger's attorney on December 14, 2010. *See* Ornum Decl., Ex. F. According to the e-mail, International Fidelity's attorney wanted both principals and attorneys present on the call. Draeger's attorney objected to the conference call on the grounds that attorney involvement was not necessary. *See* Ornum Decl., Ex. F; Pappy Decl., Ex. 6. Draeger's counsel preferred that the principals communicate directly in order to avoid unnecessary attorney's fees. Given Draeger's current non-compliance and International Fidelity's concerns about Draeger's financial condition, both positions have merit. This disagreement over the necessity and propriety of a conference call is one for counsel, not the Court, to resolve.

1    Second, Radzinski contacted Comerica Bank on December 16, 2010 and set up what he
2    thought was a joint checking account in compliance with the Preliminary Injunction. *Id.* ¶ 6.
3    Radzinski contacted Comerica Bank because Draeger already had a bank account there that
4    Draeger was not using. *Id.* ¶ 2. Radzinski filled out an application and gave it to his attorney on
5    December 17, 2010.[5] *Id.* ¶ 6. After learning that the account he sought to create did not comply
6    with the Preliminary Injunction, Radzinski contacted Comerica again on December 23, 2010. *Id.* ¶
7    7. Radzinski finally discovered, after speaking with a Vice-President of Comerica on January 4,
8    2011, that Comerica Bank could not offer Draeger a joint account that could comply with the
9    Preliminary Injunction. *Id.* ¶ 9.

10   Third, Radzinski met with a Bank of America representative and attempted to create a
11   compliant joint account there. *Id.* ¶ 10. Bank of America advised Radzinski and Draeger's
12   attorney that a joint account was not possible because of the risk of a check going through the
13   automated system without two signatures. *Id.* At that time, Radzinski solicited help from
14   International Fidelity consultant Jordan Rosenfeld. *Id.*

15   Based on Draeger's reasonable efforts to comply with the Preliminary Injunction, the Court
16   finds a contempt hearing unnecessary and sanctions unwarranted. This decision is further
17   supported by the fact that International Fidelity has not alleged that Draeger is misusing any project
18   funds or is failing to meet any of its performance or payment obligations. In fact, Draeger's
19   counsel represented that it is using all project funds that are subject to the Preliminary Injunction
20   for payment of job costs. *See* Dkt. No. 34, Ex. N. This holding does not, however, condone
21   Drager's violation of the Preliminary Injunction. The Court anticipates that Draeger will quickly
22   comply with the Preliminary Injunction. Draeger is reminded that it explicitly consented to the

---

[5] Draeger's counsel, on December 20, 2010, sent International Fidelity's attorney the Comerica Bank joint account application. Pappy Decl., Ex. 4. In the letter accompanying the application, Draeger's counsel represents that the account complies with the Preliminary Injunction. As International Fidelity's counsel later pointed out to Draeger's attorney, however, the joint account application reveals that the underlying account did not comply with the Preliminary Injunction. The application clearly states that "[a]ny one (1) of the Authorized Signers whose Authorized Signature is shown in this document, may transfer or withdraw funds." This directly contradicts the requirement that any withdrawals from the Trust Account must be approved by both Draeger and International Fidelity. Thus, Draeger's attorney is responsible for some of the delay in discovering that the Comerica Bank joint account did not comply with the Preliminary Injunction.

injunction to create a Trust Account.  *See* Dkt. No. 24.  If Draeger continues to violate the Preliminary Injunction, further Court action may be necessary.

### C.  Draeger and International Fidelity's Court Mediation Date

Contained in the declaration submitted by Draeger's counsel is an e-mail, sent by Draeger's attorney to International Fidelity's attorney, that suggests mediation dates that would occur after the January 24, 2011 deadline set forth in the Court's Case Management Order, Dkt. No. 23, and the February 9, 2011 Case Management Conference.  *See* Pappy Decl., Ex. 10.  Parties shall participate in court mediation prior to their scheduled Case Management Conference.  Failure to do so will not be tolerated.

## IV.  CONCLUSION

For the foregoing reasons, International Fidelity's application for an order for Draeger to show cause why sanctions should not issue is DENIED without prejudice.

**IT IS SO ORDERED.**

Dated: January 14, 2010

_____
LUCY H. KOH
United States District Judge