UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| INTERNATIONAL FIDELITY INSURANCE COMPANY, a New Jersey corporation,<br><br>             Plaintiff,<br>    v.<br><br>DRAEGER CONSTRUCTION, INC., a California corporation; JOHN E. DRAEGER, an individual; and JOHN E. DRAEGER, TRUSTEE OF JOHN E. DRAEGER REVOCABLE TRUST, domiciled in California,<br><br>             Defendants. | Case No.: 10-CV-04398-LHK<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS FEES |

On August 12, 2011, the parties informed the Court that Plaintiff International Fidelity Insurance Company ("Plaintiff" or "International Fidelity") accepted Defendants Draeger Construction, Inc. et al.'s ("Defendants" or "Draeger") Offer of Judgment pursuant to Federal Rule of Civil Procedure 68 ("Rule 68 offer of judgment"). Judgment was entered by the Clerk on August 29, 2011. ECF No. 51. Shortly thereafter, a dispute arose between the parties regarding whether the terms of the Rule 68 offer of judgment included the payment of attorneys' fees and other costs. Before the Court are Plaintiff's motion for attorneys' fees and costs and Defendants' motion to tax costs. ECF Nos. 55 & 56. Pursuant to Civil Local Rule 7-1(b), the Court deems Plaintiff's fee motion and Defendants' motion to tax costs appropriate for resolution without oral argument, and VACATES the February 9, 2012 motion hearing. For the reasons explained below,

1

Case No.: 10-CV-04398-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES

Plaintiff's motion is GRANTED IN PART AND DENIED IN PART, and Defendants' Motion is GRANTED.

## I. BACKGROUND

Plaintiff, International Fidelity, is in the business of underwriting surety bonds for the construction industry. Order Denying Temporary Restraining Order at 2 ("TRO"), ECF No. 12. Construction companies take on certain obligations when undertaking a construction project, such as completing the construction project and paying "subcontractors, laborers and material suppliers whose work and materials are incorporated into the projects." *Id.* at 2. Plaintiff's business is to provide a guarantee, in the form of surety bonds, that the construction company will meet its obligations. *Id.* Plaintiff acted as underwriter for surety bonds issued on behalf of Defendants for a number of construction projects. In connection with the issuance of these bonds, Defendants and Plaintiff entered into an Agreement of Indemnity ("the Agreement"). Compl. Ex. A, ECF No. 1.

After reviewing Defendants' records, Plaintiff discovered that Defendants detailed a projected cash shortfall from operations arising out of Plaintiff-bonded projects in the amount of $982,894. Compl. ¶ 14. In light of this projected cash shortfall, Plaintiff demanded that Defendants comply with various provisions of the Agreement. Compl. ¶ 15. When Defendants failed to comply with Plaintiff's demands pursuant to the agreement, Plaintiff filed a Complaint on September 29, 2010. ECF No. 1.

In the Complaint, Plaintiff claimed that Defendants breached the Agreement. Plaintiff sought specific performance, injunctive relief, and declaratory relief. Plaintiff requested that Defendants be required to (1) establish joint control accounts, (2) account for trust funds arising out of bonded contracts, (3) detail the source of funds to be paid to Defendants' bank, (4) provide access to books, records and accounts to confirm that Defendants used funds not subject to the trust imposed by the Agreement to pay their bank debt due as of August 31, 2010, (5) pay to International Fidelity $1,179,473 to be held as collateral, and (6) indemnify International Fidelity

for the losses, costs, fees and expenses incurred by International Fidelity on the bonds.[1] Compl. Prayer for Relief.

Plaintiff filed a motion for a temporary restraining order to enforce the Agreement, and to require Defendants to "(1) establish a joint control account for trust funds arising out of construction projects bonded by [Plaintiff] . . . and (2) refrain from using the trust funds for payment of obligations not covered by [Plaintiff's] bonds." TRO at 2. The Court denied the Plaintiff's motion. *Id.* Plaintiff filed a motion for a preliminary injunction. ECF No. 16. At the October 26, 2010 hearing, Defendants stipulated to a preliminary injunction. On November 12, 2010, the Court entered a preliminary injunction requiring Defendants to: (1) use all money obtained from projects covered by International Fidelity's bonds for the benefit of persons performing labor or providing materials on those projects and for payment of obligations arising in connection with such projects, (2) require the project managers on three of their construction projects to issue joint check payments for all persons performing labor or providing materials for projects covered by International Fidelity's surety bonds, and (3) open joint control trust accounts for two of their construction projects. ECF No. 30. The preliminary injunction also placed restrictions on how Defendants could use funds that were deposited in the joint trust accounts. *Id.*

On January 5, 2011, Plaintiff filed an application for an order to show cause why Defendants should not be sanctioned for contempt for failure to comply with the preliminary injunction order. ECF No. 33. The Court denied the request, finding that: (1) Plaintiff had not met its burden that Defendants were violating the joint checks provision of the preliminary injunction, and (2) although Defendants appeared to be violating the joint trust account provision of the preliminary injunction, Defendants had taken several reasonable steps to create a compliant joint account and that the failure to set up the joint trust account was at least partially attributable to Plaintiff. *See* Order Denying Request for Order to Show Cause at 4-7, ECF No. 39.

The parties attended mediation on February 22, 2011. Pappy Decl. ¶ 2. "During the course of the mediation, Draeger made an offer to settle the matter for exactly what appears in the Rule 68

---

[1] In addition, International Fidelity sought a declaratory judgment establishing that Defendants were obligated to "pay any remaining obligations due to the bank from funds not subject to the trust imposed by the Agreement." *See* Compl. ¶ 38.

3

Case No.: 10-CV-04398-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES

offer." *Id.* It appears as though the issue of payment of attorneys' fees and other expenses remained unresolved at that time. *See* Pl.'s Reply In Support of Mot. for Attorneys' fees at 9, ECF No. 58.

On June 22, 2011, Defendants made an offer of judgment pursuant to Federal Rule of Civil Procedure 68 (the "Rule 68 Offer"). The Rule 68 Offer allowed judgment to be taken against Defendants in favor of Plaintiff. The Rule 68 Offer contained six terms. The first four terms of the Rule 68 Offer were substantially similar to the four terms imposed on Defendants in the preliminary injunction. Specifically, the differences between the first four terms in the Rule 68 Offer and the four terms imposed on Draeger in the preliminary injunction order were: (1) the requirement regarding the use of joint check payments was imposed on a third project, the Atria Valley Project, (2) the joint control account requirement was no longer imposed on the Atria Valley project, and (3) Draeger was required to deposit funds into joint control accounts opened by International Fidelity. In addition, the Rule 68 Offer contained two new terms that required Defendants to provide Plaintiffs with collateral in the amount of $386,523, and entitled Plaintiff to "[r]ecoverable costs accrued by [International Fidelity]." *See* Rule 68 Offer of Judgment, ECF No. 50.

Plaintiff accepted the Rule 68 Offer, and Judgment was entered by the Clerk on August 29, 2011. ECF No. 51. Plaintiff has filed a motion to recover attorneys' fees and costs under the Rule 68 Offer. Specifically, Plaintiff seeks $75,706 for attorneys' fees expended to obtain the offer of judgment. Van Orum Decl. ¶ 11, ECF No. 55-2. Additionally, Plaintiff requests $47,434.34 in expert consultant fees; $2,384.54 in miscellaneous costs, including legal research costs, attorney meals and travel, conference services, copying fees, and court costs; and $15,300.00 in attorneys' fees for the cost of pursuing this fee dispute. Van Orum Decl. ¶¶ 15, 18, 22. In total, Plaintiff seeks to recover $140,824.88. Defendants challenge both the attorneys' fee award, and any award of costs beyond $462 for the filing fee and service of process fee. *See also* Defendants' Motion to Tax Costs at 4, ECF No. 56-1.

## II. ANALYSIS

### A. Attorneys' Fee Award

4

Case No.: 10-CV-04398-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES

Both Federal Rule of Civil Procedure 68 and the Rule 68 Offer in this case provide that International Fidelity is entitled to accrued costs. *See* Fed. R. Civ. P. 68; Rule 68 Offer. However, both Federal Rule 68 and the Rule 68 Offer in this case are silent as to whether "costs" includes attorneys' fees. Under prevailing Ninth Circuit law, a plaintiff is not precluded from seeking attorneys' fees in a matter resolved by a Rule 68 offer merely because the offer does not mention attorneys' fees. *See Nusom v. Comh Woodburn, Inc.,* 122 F.3d 830, 834 (9th Cir. 1998). To determine whether a cost is recoverable pursuant to a Rule 68 offer of judgment, the court must look to the relevant substantive statute of the underlying claim. *Marek v. Chesny*, 473 U.S. 1, 9 (1985). Because Plaintiff brought this lawsuit seeking to enforce a contract, California Civil Code § 1717 applies. California Civil Code § 1717 provides:

> (a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.
>
> . . .
>
> Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit.

Thus, California Civil Code § 1717 establishes that Plaintiff may recover attorneys' fees if: (1) the indemnity agreement "specifically provides [for the award of] attorney's fees and costs," (2) Plaintiff is the prevailing party, and (3) the attorneys' fee request is reasonable. *See First Nat. Ins. Co. of America v. MBA Const.*, No. 04-CV-836, 2005 WL 3406336 at *2 (E.D. Cal. Dec. 12, 2005).

### 1. Contractual Provision

Plaintiff identifies two separate provisions of the Agreement through which it is entitled to attorneys fees. First, paragraph 3 of the Agreement, under the heading "Discharge and Additional Security" provides:

> The Contractor and Indemnitors will, upon the written request of the Surety, promptly procure the full and complete discharge of the Surety from any Bonds specified in such request and all potential liability by reason of such Bonds. If

5
Case No.: 10-CV-04398-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES

such full and complete discharge is unattainable, the Contractor and Indemnitors will, if requested by the Surety, within five (5) business days, place the Surety in funds that are immediately available and sufficient to meet all of the Surety's liabilities that are in force prior to the date of the Surety's demand.  The Surety may make such demand for funds at any time and without regard to whether it has sustained any loss or received any claim.  The amount of such demand, including reasonable attorney fees and expenses, is at the sole discretion of the Surety.

The Contractor and Indemnitors waive, to the fullest extent permitted by applicable law, each and every right which they may have to contest such payment.  **Failure to make immediate payment to Surety as herein provided shall cause the Contractor and Indemnitors to be additionally liable for any and all reasonable costs and expenses, including attorneys fees, incurred by the Surety in enforcing this provision**.

Compl. Ex. A, ¶ 3 (emphasis added).  In addition, paragraph 2 of the Agreement, under the heading "Indemnity," provides:

**The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and the cost of services rendered by counsel, investigators, accountants, engineers or other consultants, whether consisting of in-house personnel or third party providers)** and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) **In enforcing any of the covenants and conditions of this Agreement**.

Compl. Ex. A, ¶ 2 (emphasis added).

Defendants argue that the Agreement is an indemnity contract, which does not authorize attorneys' fees.  Opp'n to Mot. for Attorneys' Fees at 4, ECF No. 57 (citing *Carr Bus. Enters., Inc. v. City of Chowchilla*, 166 Cal. App. 4th 14, 20 (2008)).  Generally, a contract provision that provides for indemnification of third party claims does not "constitute a provision for the award of attorney fees in an action on the contract which is required to trigger section 1717."  *Carr Bus. Enters., Inc.*, 166 Cal. App. 4th at 20.  However, where the contractual provision of an indemnity agreement explicitly provides for attorneys' fees arising from the enforcement of the contract itself, courts have found that section 1717 applies.  *See Baldwin Builders v. Coast Plastering Corp.*, 125 Cal. App. 4th 1339, 1344 (2005) (allowing recovery where the contract provided for attorney's fees incurred in enforcement of the indemnity agreement); *Cont'l Heller Corp. v Amtech Mechanical*

*Servs., Inc.*, 53 Cal. App. 4th 500, 508-09 (1997) (allowing recovery where the contract provided for attorney's fees suffered or incurred "on account of any breach of the aforesaid obligations and covenants and any other provision or covenant of this Subcontract").

As is apparent from the provisions identified above, paragraphs 2 and 3 of the Agreement establish that Plaintiff is entitled to attorneys' fees incurred in enforcing the contract. Contrary to Defendants' assertions, the contract is not merely an agreement to indemnify third-party claims. Thus, section 1717 applies, and Plaintiff may recover reasonable attorneys' fees if Plaintiff meets the definition of "prevailing party."

### 2. Prevailing Party

Where a party seeks fees in a matter resolved by Rule 68, the court must determine which party has prevailed and award attorneys' fees accordingly. *See Sea Coast Foods, Inc. v. Lu-Mar Lobster and Shrimp, Inc.,* 260 F.3d 1054, 1059 (9th Cir. 2001). Section 1717(b) defines a "prevailing party" as "the party who recovered a greater relief in the action on the contract." "The court may also determine that there is no party prevailing on the contract" for purposes of section 1717(b). Cal. Civ. Code 1717(b)(1).

In interpreting "prevailing party" under section 1717, the California Supreme Court has explained that the trial court should "compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives." *Hsu v. Abbara,* 9 Cal. 4th 863, 876 (1994); *see also Berkla v. Corel Corp.,* 302 F.3d 909, 920 (9th Cir. 2002). In other words, "when the results of the litigation on the contract claims are not mixed-that is, when the decision on the litigated contract claim is purely good news for one party and bad news for the other . . . a trial court has no discretion to deny attorney fees to the successful litigant." *Hsu,* 9 Cal. 4th at 875-76. By contrast, however, "a determination of no prevailing party [typically] results when . . . the ostensibly prevailing party receives only a part of the relief sought." *Id.* at 876.

Although Plaintiff did not meet *all* of its litigation objectives through this suit, Plaintiff obtained most of the relief it sought from Defendants. Prior to filing suit, Plaintiff demanded that Defendants establish joint control accounts, account for trust funds arising out of bonded contracts, detail the source of funds to be paid to Defendants' bank, confirm that Defendants had paid their

bank debt due as of August 31, 2010, and provide collateral to International Fidelity.  Compl. ¶ 15. Defendants' Rule 68 Offer agreed to most of these demands, including establishing joint control accounts, agreeing to certain restrictions related to the use of funds deposited in the trust accounts, and providing collateral to Plaintiff.  Admittedly, the amount of collateral Defendants provided was lower than what was demanded in the complaint, and Defendants were not ultimately required to confirm that the bank debt had been paid.  Nonetheless, Plaintiff obtained what it originally sought in bringing this litigation: assurances regarding the financial health of the Defendants.  Therefore, the Court finds that Plaintiff has established that it is the "prevailing party" for the purposes of section 1717.

### 3. Reasonableness of Fees

California Civil Code section 1717 provides that "[r]easonable attorney's fees shall be fixed by the court."  The trial court has broad authority to determine the amount of a reasonable fee. *PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1095 (2000).  The fee-setting inquiry in California ordinarily begins with the "lodestar," i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate.  *Id.*  "California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award."  *Margolin v. Reg'l Planning Com.*, 134 Cal. App. 3d 999, 1004-05 (1982).

Moreover, in calculating reasonable attorneys' fees, the court must consider the following factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill necessary to perform the legal services properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relations with the client, and (12) awards in similar cases.

*See LaFarge Conseils et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.,* 791 F.2d 1334, 1341-42 (9th Cir. 1986); *see also Melnyk v. Robledo*, 64 Cal. App. 3d 618, 623-24 (1976) ("The trial court makes its determination after consideration of a number of factors, including the nature of the

litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case.").

Plaintiff argues that the fees sought are reasonable in light of prevailing market rates in the relevant community for similar work. In support, Plaintiff submitted the declaration of Andrew Van Ornum detailing the qualifications and rates for each individual in his firm who worked on the case, as well as the detailed billing records for the case showing the fees incurred. *See* Van Ornum Decl. ¶ 12, Ex. C. Plaintiff seeks fees for Andrew Van Ornum, a partner at Watt Tieder who bills at a rate of $285 per hour; Seth Sias, an associate who billed at a rate of $195 per hour; and Scott DeMello, a paralegal who bills a rate of $140 per hour. *Id.* Defendants do not contest the reasonableness of the attorneys' hourly rates, and these rates appear to be reasonable for the San Francisco area. Based on these hourly rates, Plaintiff seeks $75,706 in attorneys' fees.

While the Court is cognizant of Defendants' concerns[2] regarding Plaintiff's billing in the early part of the litigation, the Court agrees that Plaintiff is entitled to the attorneys' fees that were generated investigating the claims, filing the complaint, and obtaining the early injunctive relief sought by Plaintiff. However, the Court does not find that the attorneys' fees Plaintiff continued to accrue after the February 22, 2011 mediation were reasonable. Defendants offered the same relief at the mediation that Plaintiff eventually accepted in the Rule 68 Offer. Pappy Decl. ¶ 2. Thus, it was at that point that Plaintiff obtained what it had initially demanded from Defendants prior to initiating suit. *See* Compl. ¶ 15. Indeed, once Defendants agreed to the stipulated preliminary injunction in November 2010, Plaintiff largely obtained the assurances it sought regarding the financial health of the Defendants. Defendants offered to provide the collateral that Plaintiff sought during the February 22, 2011 mediation. Thus, additional fees generated after the February mediation were not necessary. The Court therefore declines to award attorneys' fees after the February 22, 2011 mediation. According to Plaintiff's records, the amount of fees generated through the February 22, 2011 mediation was $50,499.[3]

---

[2] Defendants in large part object to Plaintiff's fee request because Plaintiff billed almost 40 hours in preparation of the TRO that was denied. However, Plaintiff ultimately stipulated to a preliminary injunction that largely met Plaintiff's TRO demands.
[3] The Court has calculated the total attorneys' fee based upon the table of fees in the Van Ornum Declaration at paragraph 11. According to the attorney billing records, Plaintiff's attorneys billed

9
Case No.: 10-CV-04398-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES

Additionally, the Court finds that Plaintiff's Application for an Order to Show Cause (the "Application") filed January 5, 2011 was unmeritorious and any attorneys' fees generated in pursuit of the Application were unreasonable. Based on the billing records that have been submitted to the Court, it appears as though Mr. Van Ornum billed 8.2 hours on the Application between January 3, 2011 and January 14, 2011. Additionally, Mr. Sias billed 15.4 hours on the Application between January 3, 2011 and January 12, 2011. Therefore, the Court reduces the attorneys' fee award by the amount billed by Plaintiff's attorneys for the Application -- $5,340. Accordingly, the Court awards reasonable attorneys' fees[4] to Plaintiff in the amount of $45,159.

### B. Costs Award

In addition to the attorneys' fees discussed above, Plaintiff also requests $47,434.34 in expert consultant costs and $2,384.54 in miscellaneous costs, including legal research costs, attorney meals and travel, conference services, copying fees, and court costs. Defendants object to these costs because they are not authorized by any California or federal statute.

The Court once again starts with the language of Federal Rule 68 and the Rule 68 offer in this case. As stated above, both the Rule 68 Offer and Federal Rule 68 state that Plaintiff is entitled to "accrued costs." Neither the Rule 68 Offer, nor Federal Rule 68 expressly states whether "costs" includes the expert consultant fees and other miscellaneous costs that Plaintiff seeks here. The question, then, is how the term "costs" should be interpreted.

To determine whether expert witness fees and other miscellaneous costs are recoverable pursuant to a Rule 68 offer of judgment, the court first looks to the relevant statute. *See Marek*, 473 U.S. at 9. The relevant statute here is California Code of Civil Procedure section 1033.5, which governs recoverable costs and applies to diversity actions such as this. *See P'ship v. Procopio, Corry, Hargreaves & Savitch*, 152 Cal. App. 4th 42, 56 (2007). Section 1033.5 limits

---

$50,584.50 through March 8, 2011. The attorneys only billed an additional $85.50 after the mediation but before the end of the billing cycle. Therefore, the total attorneys' fees billed through the February 22, 2011 mediation was $50,499.

[4] Plaintiff also seeks $15,300 for the preparation of the fee application. The Court DENIES this request. Plaintiff estimates that this fee application will require a total of 60 attorney hours to prepare. The number of hours Plaintiff projects is unreasonable. By way of comparison, Plaintiff expended a little more than 20 hours in preparing the Application for the Order to Show Cause. Moreover, without billing records, the Court cannot determine what work on the fee application was reasonable.

10

Case No.: 10-CV-04398-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES

recoverable costs to those enumerated in the statute and does not permit expert witness fees or other miscellaneous costs.  Section 1033.5(b) (excluding from recoverable costs fees of experts not ordered by the court, investigation expenses in preparing the case for trial, postage, telephone, and photocopying charges, except for exhibits, costs in investigation of jurors or in preparation for voir dire, and transcripts of court proceedings not ordered by the court.").  Thus, because the expert expenses and other costs sought by Plaintiff are not provided for in section 1033.5, Plaintiff is not entitled to recovery of these costs pursuant to Defendants' Rule 68 Offer.

Plaintiff argues that the underlying Agreement establishes that it is entitled to recover from Defendants "expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and the cost of services rendered by counsel, investigators, accountants, engineers or other consultants, whether consisting of in-house personnel or third party providers)" incurred in enforcing the Agreement.

The court's analysis in *Stonebrae v. Toll Bros., Inc.*, No. 08-CV-0221-EMC, 2011 WL 1334444 (N.D. Cal. April 7, 2011), is instructive.  In *Stonebrae*, Judge Chen denied Plaintiff's request for expert witness fees because the Rule 68 Offer only provided for "costs."  *Id.* at *20.  Judge Chen determined that the Rule 68 Offer, and not the underlying contract between the parties, was the controlling contract between the parties in determining whether an award of expert fees was justified.  *Cf. id.* at * 20.  Judge Chen also found it persuasive that the underlying contract between the parties (as distinct from the Rule 68 offer) distinguished between litigation expenses, attorneys' fees, and costs.  In light of these distinctions, the Court concluded that the parties presumably understood the difference between "litigation expenses" and "costs."  *Id.* at *19.  Because the Rule 68 offer included only "costs" and not "litigation expenses," those additional expenses were presumably not a part of the Rule 68 offer.  Moreover, "the parties were presumably aware that § 1033.5 would normally apply where the Rule 68 offer was made and accepted and a contract (for settlement) was formed.  The wording of the Rule 68 offer did not disavow the application of § 1033.5."  *Id.*

Admittedly, the contractual language here does not as strongly support Defendants' argument against an expert fee award as the contractual language in *Stonebrae*.  The Agreement

11
Case No.: 10-CV-04398-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES

between International Fidelity and Draeger provided for an award of "costs and expenses, including attorneys fees" under paragraph 3 and for an award of "expenses" including "court costs" and the "cost of services rendered by counsel, investigators, accountants, engineers or other consultants" under paragraph 2. Thus, the Agreement itself is ambiguous as to whether the parties understood "costs" as being distinct from "expenses" or whether the term "costs" includes both "court costs" and costs for consultants. In light of the ambiguity of the term "costs" in the Agreement, the Court returns to the presumptive application of California Code of Civil Procedure section 1033.5 on the Rule 68 Offer in this case, which does not allow the expert fees and other miscellaneous costs[5] sought by Plaintiff. Because section 1033.5 does not authorize expenses for consultants, experts, or the miscellaneous costs sought by Plaintiff here, the Court DENIES Plaintiff's request for these fees. However, Defendants have agreed to pay the filing fees sought for the fees of the Clerk and the fees for service of summons and subpoena in the amount of $462. *See* Mot. to Tax Plaintiff's Costs at 4, ECF No. 56-1. Accordingly, the Court GRANTS Plaintiff's motion with respect to the court filing fees in the amount of $462.

### III.   CONCLUSION

For the reasons explained above, Plaintiff's motion for an award of attorneys' fees is GRANTED IN PART AND DENIED IN PART and Defendants' Motion to tax costs is GRANTED. Plaintiff is entitled to an award of **$45,621** in attorneys' fees and court costs.

**IT IS SO ORDERED.**

Dated:  February 8, 2012

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

---

[5] Even if the miscellaneous expenses were recoverable pursuant to the Rule 68 Offer, Plaintiff has not adequately supported its request for these fees. Other than a conclusory statement that "[t]he above costs were necessarily incurred in the conduct of this litigation, and were incurred at a reasonable cost," Van Ornum Decl. ¶ 19, Plaintiff has not provided evidence to establish the reasonableness of these costs.